# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GLENDA KAY BAILEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-13-80-RAW-SPS |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Glenda Kay Bailey requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 10, 1961, and was fifty-one years old at the time of the administrative hearing. (Tr. 30, 124). She completed the eighth grade, and has worked as cashier, cleaner, and rock crusher. (Tr. 22, 170). The claimant alleges that she has been unable to work since December 31, 2001, due to panic attacks, anxiety, spinal scoliosis, urinary problems, and hypertension. (Tr. 169).

## Procedural History

On December 30, 2008, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 28, 2012. (Tr. 10-23). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of medium work as defined in 20 C.F.R. § 416.967(c), *i. e.*, she could lift 50 pounds occasionally or 25 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, but she could only occasionally bend, stoop, kneel, crouch, or crawl, and

should never climb ladders or scaffolds. Additionally, she required a sit/stand option every hour, and should never be exposed to unprotected heights or moving mechanical parts. Finally, the ALJ imposed the psychologically-based limitations of only simple tasks with routine supervision and only occasional contact with supervisors and co-workers, but no work-related contact with the general public. (Tr. 15). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e.g.*, kitchen helper, hand packager, and machine packager. (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly consider all the medical evidence and the combined effect of her impairments, (ii) by failing to properly assess her credibility, (iii) by improperly finding that she could perform medium work, (iv) by failing to properly evaluate the treating physician opinions, and (v) by failing to fully and fairly develop the record. The undersigned Magistrate Judge finds the claimant's first and fourth contentions persuasive.

The ALJ found that the claimant had the severe impairments of urinary incontinence, chronic back pain, panic attacks, borderline personality disorder, anxiety, and major depressive disorder. (Tr. 12). Relevant medical records reveal that the claimant was treated regularly at Rana's Family Medical clinic, and treatment from 2007 to the present included her complaints of shoulder and neck pain, pain medications, blood pressure regulation, depression, and back pain. (Tr. 305-328, 446-511). Dr. Rana also completed a Medical Source Statement (MSS) stating that her symptoms included

chronic pain all over, which was worst in the back and left hip, with increased fatigue and dizziness, and that the psychological conditions of depression, somatoform disorder, and anxiety affected her physical condition. (Tr. 513-514). He indicated that she could not walk one city block without severe pain, could sit/stand ten minutes before needing to adjust her position, and could sit/stand/walk less than two hours in an eight-hour workday. He indicated that she would need to shift positions and walk around during a workday, and that she would need to take unscheduled breaks. Further, he stated that the symptoms causing the need for a break included muscle weakness, chronic fatigue, and pain/paresthesias, numbness. (Tr. 514). He also stated that her legs would need to be elevated thirty degrees for up to 30% of the day due to pain, that she could lift/carry less than ten pounds occasionally, rarely stoop/bend or crouch/squat, and never twist, climb stairs, or climb ladders. (Tr. 515). He indicated that she would be "off task" about 20% of a typical workday, and that she was incapable of even "low stress" work due to a generalized anxiety disorder and panic attacks. (Tr. 516). He indicated that if she were to work full-time, she would be absent about one day per month due to her impairments. (Tr. 516). A consultative examiner assessed the claimant with obesity, back pain, scoliosis, and two positive points for fibromyalgia. (Tr. 298, 303). A second consultative examiner found that the claimant had chronic back pain, slight scoliosis of her thoracolumbar spine, low back pain, major depression, and HTN. (Tr. 341). He also noted that she had a few trigger points for fibromyalgia but did not positively fit the criteria. (Tr. 341).

Dr. Theresa Horton conducted two mental status examinations. On February 2, 2010, she diagnosed the claimant with panic disorder, generalized anxiety disorder, major depressive disorder recurrent severe, and early onset dysthymia, as well as chronic pain, spinal scoliosis, and possible fibromyalgia. As for the claimant's prognosis, she wrote that the claimant "appears capable of understanding, remembering and managing simple and complex instructions and tasks, *though not while adjusting and adapting in an occupational setting*. Her presentation is somewhat odd, and she likely struggles in all but small, familiar social settings as well." (Tr. 280, emphasis added). On November 2, 2011, she diagnosed the claimant with major depressive disorder recurrent severe, anxiety disorder NOS, panic disorder, borderline personality disorder, chronic pain, high blood pressure, and bladder/urinary problems. She stated that the claimant "appears capable of understanding, remembering and managing simple and somewhat more complex instructions and tasks. It appears that Ms. Bailey developed persistent self defeating personality traits early in life that have often interfered with relationships, and likely will continue to make adequate adjustment into occupational and social settings difficult." (Tr. 337).

Additionally, both the claimant's husband and a friend completed Third Party Function Reports based on the claimant's abilities. The claimant's husband stated that he sometimes has to help her get dressed, as well as in and out of the bathtub and using the restroom, that she cannot finish cooking a meal due to pain and it takes an extended time to cook, and that her activities are limited due to pain. He further stated that she does not handle stress or changes in routine very well. (Tr. 154-161). The claimant's friend stated

that the claimant is unable to attend to her own personal needs such as dressing and brushing her hair, that she cannot finish preparing meals or complete household chores, that she is prone to panic attacks, and that she needs help walking. (Tr. 219-226).

At the administrative hearing, the claimant testified that she has to get up and walk around every twenty to thirty minutes due to pain in the lower left side of her back, hip, and leg, and that she is on pain medications. (Tr. 37-39, 50-51). She further testified that she suffers from panic attacks multiple times a day, during which she hyperventilates and has an increased heart rate. (Tr. 40). When discussing getting mental health care treatment, she indicated that she was aware of facilities but she was afraid and felt hopeless to call. (Tr. 41). She says that she can help her son with the settings for laundry, that she cannot finish preparing meals, garden, or do dishes, but she reads and does crossword puzzles. (Tr. 48). In response to questioning, she stated that she could not bend or twist at the waist, squat, nor could she climb stairs, due to pain and numbness. (Tr. 52-54). As for her ability to carry weight, she stated that she could not carry even five pounds, and had even stopped carrying a purse due to pain in her left shoulder. (Tr. 58-59).

In his written opinion, the ALJ summarized the claimant's testimony as well as the medical record. He found that there were no "objective" tests to support the claimant's alleged level of pain, and found her (and her husband and friend) to be not credible. (Tr. 15-21). The ALJ then rejected Dr. Rana's MSS, and adopted the state reviewing physician opinions that the claimant could perform medium work with the additional limitations that he found. (Tr. 21).

Although the ALJ found that the claimant's urinary incontinence and chronic back pain were severe impairments, he failed to include any limitations related to either in the claimant's RFC (Tr. 12-22). *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments. Instead, the ALJ should have explained why the claimant's urinary incontinence and chronic back pain did not call for corresponding physical limitations related to her back, lower extremity, and need to accommodate her bladder problems in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). In particular, the ALJ should explain how the claimant's inability to get out of her bathtub without assistance translates to the ability to do medium work, including carrying fifty pounds occasionally in an eight-hour workday.

The ALJ also disregarded Dr. Horton's two opinions expressing concerns that the claimant would be able to adjust to a work environment. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ noted at step two Dr. Horton's statement that the claimant was capable of understanding, remembering, and managing simple and somewhat more complex instructions and tasks, but left out concerns about the claimant's ability to adapt to a work environment, and did not even discuss the evaluation at step four. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical

reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Finally, the ALJ erred in evaluating the Third Party Function Reports. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939. SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. The ALJ mentioned the Third Party Function Reports, but discredited it by stating generally that lay witness testimony is often dependent upon the subjective complaints of the claimant, wholly failing to properly evaluate it in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may

be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement and without the proper analysis.

Because the ALJ failed to explain how the claimant's severe impairments of urinary incontinence and chronic back pain at step two became so insignificant as to require no limitations in his RFC at step four, and further failed to properly address Dr. Horton's evaluations and the Third Party Function Reports contained in the record, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus

RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of March, 2014.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma